**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NOS. 25-455-02** |
| **MUJAHID DAVIS** | : | |

# GOVERNMENT'S AMENDED SENTENCING MEMORANDUM

Defendant Mujahid Davis, working in concert with two other individuals, committed multiple brazen armed robberies of Brinks trucks in broad daylight that were carrying substantial sums of money. After successfully committing one robbery on August 12, 2025, that netted over a $100,000, Davis and his co-conspirators were only stopped when they attempted another armed robbery on October 3, 2026. After being spotted by law enforcement, who attempted to conduct a traffic stop on the stolen vehicle being operated by the defendant and his co-defendant, the offenders fled the area and a high-speed chase ensued. The defendants left a distinctive rifle used to commit each of the charged offenses in their stolen vehicle, and upon breaking free of the pursuing law enforcement vehicles, fled on foot where they discarded another firearm along their flight path. In each of the offenses of conviction, the defendant and his co-conspirators used a rifle, that was later recovered, loaded with 53 rounds of 5.56 ammunition. In the offenses charged in Counts One and Five, the defendant and his co-conspirators stole the duty firearm of the Brinks driver. The significance of these crimes cannot be understated, a fact demonstrated by the remaining substantive count in which the defendant was charged, Count Three, where the Brinks' driver fired his duty weapon multiple times at the defendants. The defendant's actions in this case were brazenly violent and only by the intervention of law enforcement was the defendant stopped from committing additional violent crimes. The government seeks a sentence

that will protect the public from further violent criminal conduct. For these reasons, as well as for the reasons provided below, the government recommends a sentence of incarceration slightly below the advisory guideline range and in accordance with the plea agreement, specifically a sentence of 156 months' incarceration, derived from a concurrent sentence of 72 months' incarceration on each of Counts One, Three, Five, and Seven, to be followed by a consecutive sentence of 84 months' incarceration on Count Six, a five-year term of supervised release, a $500 special assessment, and restitution of $122,225.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I. **BACKGROUND**

On October 16, 2025, a grand jury sitting in the Eastern District of Pennsylvania returned a five-count indictment docketed at 25-CR-455, charging the defendant with one count of attempted Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a). On January 8, 2026, a grand jury returned a superseding indictment that charged the defendant with Hobbs Act robbery and attempted Hobbs Act robbery in Counts One, Three, Five, and Seven, and the carrying, using, and brandishing of a firearm during and in-relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) in Counts Two and Six. On March 27, 2026, the defendant pled guilty to two counts of Hobbs Act robbery (Counts One and Five) and two counts of attempted Hobbs Act robbery (Counts Three and Seven), all in violation of 18 U.S.C. § 1951(a), and one count of carrying, using, brandishing a firearm during and in-relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), (Count Six) as charged in the superseding indictment. The government agreed to dismiss Count Two at the time of sentencing assuming the conditions set forth in the plea agreement were met. GPA, ¶ 5a.

On Wednesday, July 2, 2025, at approximately 12:17 p.m., law enforcement responded to a robbery in progress call outside the Dollar General located at 8445 Frankford Avenue, Philadelphia, Pennsylvania. Through investigation, it was determined that three individuals, one of whom was the defendant, Mujahid Davis, committed an armed robbery of a Brink's vehicle that contained U.S. Currency. The victim, who was working alone, stated that after making a

money pick-up from Dollar General and walking back to his truck, he was approached by an individual armed with a black handgun. The victim then saw two additional offenders, one of whom was armed with an AR-15 style firearm and was moving towards him. The first offender then removed the victim's duty firearm, while another offender took the bag containing the money that was picked up from Dollar General, which contained approximately $3,125.00 in United States Currency (USC). The third offender, armed with a rifle, ultimately stayed next to the offenders' car. After the robbery, the offenders got into their getaway vehicle and fled the scene.

On Tuesday July 15, 2025, at approximately 11:26 a.m., there was an attempted robbery of a Brink's armored truck in area of 8210 Castor Avenue, Philadelphia, PA, outside of a Planned Parenthood. Through investigation, it was determined that three individuals, one of whom was the defendant, attempted to rob a Brink's employee of U.S. Currency. The victim, a driver for Brink's, reported that he was making a delivery to Planned Parenthood when he was approached from behind by an offender carrying a handgun. The victim drew his duty firearm and fired eight shots at the individual carrying the handgun. The offender then fled northbound on Castor Avenue. At the same time, a second offender armed with an AR-style rifle was positioned near the intersection of Castor Avenue and Emerson Street, who also fled by entering the passenger seat of the offenders' black four-door sedan. The offenders then sped off on Emerson Street and turned north on Castor Avenue. Surveillance video also revealed that the two offenders exited the front passenger seat and rear driver's seat of the vehicle just before the robbery, indicating there was also a getaway driver who aided and abetted the attempted robbery.

On August 12, 2025, at approximately 10:22 a.m., an armed robbery of a Brink's armored truck occurred at 7320 Old York Road, Elkins Park, Pennsylvania. Cheltenham Police

Officers responded to the robbery and interviewed the victim of the offense. The victim reported that she was making a delivery to H-Mart when she was approached by two masked men carrying firearms, one of whom was the defendant. The victim described one of the offenders as being armed with an AR-style rifle, and reported that the other offender was armed with a handgun. The first offender pushed the barrel of the rifle into her neck and stated, "don't f*ing move, don't f*ing move, give it to me." The second offender also pushed the handgun up against her back. The offenders took the victim's duty firearm from its holster as well as the bag of U.S. Currency in her possession that she was about to deliver to H-Mart. The offenders stole approximately $119,100.00.

On October 3, 2025, Federal Bureau of Investigation (FBI) personnel received information that co-defendant Dante Shackleford was at the H-Mart, the location of the robbery charged in Count Five. The FBI and Philadelphia Police Department (PPD) officers then located defendant Davis and Shackleford in a stolen Honda Accord that was parked near a Brink's vehicle that was servicing a Target located at 4060 City Avenue in Philadelphia. PPD marked units attempted to conduct a traffic stop on the vehicle being operated by the defendant and Shackleford, but the defendants' vehicle fled from police. After a lengthy vehicle pursuit, the defendants' vehicle escaped but was soon located, parked and unoccupied in Bala Cynwyd, Pennsylvania. A later search of the vehicle resulted in the recovery of an ET Arms Inc. Omega P-1 .556 caliber rifle that was loaded with one live round in the chamber and fifty-two (52) live rounds in the magazine. This rifle was consistent with the AR-style rifle described above, that was used to commit the attempted and completed robberies charged in the Superseding Indictment.

Later that afternoon, law enforcement personnel located the defendant hiding in a

wooded area behind a residence in Bala Cynwyd. Along the defendants' flight path, law observed several items of evidence that were discarded, including a loaded Glock 17 handgun, a key fob, and clothing. The recovered key fob operated the stolen Honda Accord, that was used by the defendants to flee from police. At the time that officers spotted the defendants' vehicle near the Brink's truck on October 3, 2025, they were intending to commit a robbery of the Brink's driver.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence.

**Counts One, Three, Five, and Seven:** The maximum penalty for a violation of Title 18, United States Code, Section 1951(a) (robbery and attempted robbery which interferes with interstate commerce) is 20 years' imprisonment, three years' supervised release, fine of up to $250,000, and a $100 special assessment.

**Count Six**: The maximum penalty for a violation of Title 18, United States Code, Section 924(c) (carrying, using, and brandishing a firearm during a crime of violence) is life imprisonment, a mandatory minimum seven years' incarceration consecutive to any other sentence imposed, five years' supervised release, fine of up to $250,000, and a $100 special assessment.

**Total Maximum Sentence:**

The defendant faces a total maximum sentence of life imprisonment, a seven-year mandatory minimum term of imprisonment consecutive to any other sentence imposed, a five-year period of supervised release, a $1,250,000 fine, and a $500 special assessment. Full restitution also shall be ordered.

### B. Sentencing Guidelines Calculation.

The applicable guideline range in this case is 162-181 months as accurately calculated in the Presentence Investigation Report (PSR). First, regarding the robbery charged in Count One, the base offense level for a violation of 18 U.S.C. § 1951(a) (Hobbs Act robbery) is 20 under USSG § 2B3.1(a). Here, six levels are added because a firearm was otherwise used, here the offenders conveyed a specific threat by pointing a firearm. PSR ¶ 34; USSG § 2B3.1(b)(2)(B). An additional level is added because a firearm was stolen from the Brinks' driver during the robbery. PSR ¶ 35. Thus, the adjusted offense level for robbery charged in Count One is 27. PSR ¶ 39.

The base offense level for the attempted robbery charged in Count Three is 20. PSR ¶ 40. Here, an additional six-levels are added because the firearm was used to convey a specific threat of harm. PSR ¶ 41. Thus, the adjusted offense level for the attempted robbery charged in Count Three is 26. PSR ¶ 45.

The base offense level for the robbery charged in Count Five is 20. PSR ¶ 46. Again, the offenders stole the duty firearm of the Brinks driver during the robbery, thus an additional level is added. Here, because the defendant was convicted of a 924(c) offense arising from this incident, no additional weapons enhancements are applied. Here, the offenders stole $119,100 during the robbery. PSR ¶ 48. Because the loss amount exceeded $95,000, an additional two levels are added. PSR ¶ 48. Thus, the adjusted offense level for Count Five is 23. PSR ¶ 52,

Finally, the base offense level for the attempted robbery charged in Count Seven is 20. PSR ¶ 53. The offenders possessed a firearm during the attempted robbery, specifically the rifle and the handgun that were recovered in the offenders' stolen vehicle and along their flight path,

thus five levels are added. PSR ¶ 54. Thus, the adjusted offense level for Count Seven is 25. PSR ¶ 58.

Based on the adjusted offense level of each of the offenses noted above, Count One – 27, Count Three – 26, Count Five – 23, and Count Seven – 25, each offense is between one and four units less serious than the most serious offense, thus each offense counts as one unit. PSR ¶ 59. When the multiple count adjustment is applied, there are a total of four units. PSR ¶ 59. Where there are four units, an additional four levels are applied to the offense with the highest adjusted offense level, thus the combined adjusted offense level is 31. PSR ¶ 62.

Here, the defendant timely accepted responsibility and the government agrees that he should receive the three-point reduction in the offense level. See PSR ¶ 64-65; USSG § 3E1.1(a-b). Thus, the total offense level is 28. PSR ¶ 28.

The defendant has no prior adjudications or adult criminal convictions, thus his criminal history score is zero and he is assigned criminal history category I. PSR ¶ 69.

The guideline range for an offense level of 28 and a criminal history category of I is 78-97 months. PSR ¶ 102; USSG Sentencing Table. Here, 84 months are added to the guideline range based on the conviction on Count Two, thus the final guideline range becomes 162 to 181 months. PSR ¶ 102.

## III. <u>ANALYSIS</u>

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting

*Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

**A. Consideration of the 3553(a) Factors Regarding Imprisonment.**

The defendant and his cohorts committed a serious of armed robberies using a rifle loaded with 53 rounds in broad daylight. The targets of the robberies were armed drivers for Brinks, thus the dangerousness of the conduct that occurred here would be difficult to overstate. There is a grave need to protect the public from future violent crimes committed by the defendants. Davis' crimes fall squarely within the class of cases to which the applicable guidelines are addressed, and thus consideration of the nature of the offense, § 3553(a)(1), counsels in favor of the guideline sentence.

The government concurs that a slight downward variance is appropriate here in light of the defendant's lack of any prior criminal convictions as we ll as his personal history and characteristics as outlined within the PSR. PSR ¶ 79. That said, the nature and circumstances of the offenses of conviction and the potential harm that could result from repeated armed robberies of persons simply doing their job, which requires them to be armed, are incredibly serious and merit a significant term of incarceration.

In addition, adherence to the recommended guideline range assures that the defendant's sentence is consistent with those imposed nationwide on similarly situated offenders, and thus complying with Section 3553(a)(6) and avoiding undue disparity.

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D).

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition in this case of a 156-month sentence. As noted, the Sentencing Guidelines present "the lodestone of sentencing," *Peugh*, 569 U.S. at 544, and that guide is once again persuasive in this case.

**B. <u>Supervised Release</u>.**

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of

supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of at least five years is warranted. As explained above, the defendant noted a legitimate work history of approximately one month and reported gambling at casinos on a weekly basis. PSR ¶ 89, 93. Given the nature of the offenses of conviction, it would be beneficial to both society and the defendant to ensure that he secures legitimate employment and that his gambling is monitored or prohibited. Close supervision following release from imprisonment is warranted to aid his reentry to society and to protect the public. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), protect the public, § 3553(a)(2)(C), assure that the defendant continues to pursue education and vocational efforts that promote rehabilitation, § 3553(a)(2)(D), and pays restitution to victims, § 3553(a)(7). Further, the Sentencing Commission recognizes that "the more serious the defendant's criminal history, the greater the need for supervised release." § 5D1.1 app. note 2. The Commission adds: "In a case in which a defendant sentenced to imprisonment is an abuser of controlled substances or alcohol, it is highly recommended that a term of supervised release also be imposed." § 5D1.1 app. note 3.

This assessment also supports imposition of all of the mandatory and standard conditions of supervised release listed in Section 5D1.3.

## IV. CONCLUSION

The government's final recommendation regarding sentencing appears in the sealed attachment.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s Robert E. Eckert*
Robert E. Eckert
Kwambina I. Coker
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Gina Amoriello, Esq.

*/s Robert E. Eckert*
Robert E. Eckert
Assistant United States Attorney

DATED: July 28, 2026